1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.L., by and through his parents and guardians, J.L. and L.L.,<br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS; AMAZON CORPORATE LLC GROUP HEALTH AND WELFARE PLAN; and AMAZON CORPORATE LLC,<br><br>Defendants. | NO.  2:18-cv-1308<br><br>COMPLAINT (ERISA)<br><br>**[REDACTED]** |

## I.  PARTIES

1.    **S.L.**  Plaintiff S.L. is a dependent of an employee of Amazon.com, Inc. and a participant in the Amazon Corporate LLC Group Health and Welfare Plan (the "Plan").  He is a resident of King County, Washington.  S.L. is diagnosed with both a mental illness and substance use disorder.  In 2016, when he was a minor, S.L. sought and received treatment for these severe illnesses at Catalyst Residential Treatment ("Catalyst"), a licensed residential treatment center ("RTC") located in Utah.  Although Defendants cover medically necessary RTC services to treat mental and substance use

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

illnesses, Defendants denied all coverage provided by Catalyst to S.L. and denied all of S.L.'s appeals of the denials of coverage in violation of the terms of the Plan.

2.     ***Premera Blue Cross.***  The Plan's health benefits are claims administered by Defendant Premera Blue Cross ("Premera").  Premera answers benefit questions, makes benefit decisions, pays claims, and processes appeals under the Plan and, in that capacity, is a fiduciary under ERISA.  Premera is located in King County, Washington.

3.     ***Amazon Corporate LLC Group Health and Welfare Plan.***  Defendant Amazon Corporate LLC Group Health and Welfare Plan is an employee welfare benefit plan under the Employment Retirement Security of Act of 1974 ("ERISA").  The Plan includes a component plan identified as the Amazon and Subsidiaries Standard Plan, which provides health benefits for S.L.

4.     ***Amazon Corporate LLC.***  Amazon Corporate LLC is the "Plan Sponsor" and "Plan Administrator" and is a fiduciary under ERISA.  It is also located in King County, Washington.

## II.   JURISDICTION AND VENUE

5.     Jurisdiction of this Court arises pursuant to ERISA, 29 U.S.C. § 1001, *et seq.*, 29 U.S.C. § 1132(a)(1)(B), (3) and (e)(1).

6.     Venue is proper under 29 U.S.C. § 1132(e)(2) because, *inter alia*, a defendant resides or may be found in this district.

7.     In conformity with 29 U.S.C. §1132(h), Plaintiff has served this Complaint by Certified Mail on the Secretary of Labor and the Secretary of Treasury.

## III.   NATURE OF THE CASE

8.     This is an ERISA case concerning the denial of medically necessary residential mental health benefits to Plaintiff S.L. by Defendants Premera Blue Cross,

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

Amazon Corporate LLC Group Health and Welfare Plan and Amazon Corporate LLC (hereinafter collectively referred to as "Amazon").

9.      Amazon denied all coverage of S.L.'s medically necessary mental health treatment at Catalyst, without a full and fair review of all medical records, and without properly applying the terms of the Plan or even the InterQual Criteria, the internal clinical guidelines relied upon by Amazon's claims administrator, Premera.

10.      Instead, Premera, on behalf of Amazon, denied coverage without: (1) obtaining appropriate medical records for the relevant look-back period under its own clinical coverage criteria; (2) communicating with S.L., his parents and Catalyst providers about the precise information needed for an appropriate review; and (3) applying the precise Plan language.  Instead, at the final level of review, Premera's panelists were swayed by one non-medical panelist's conviction that residential mental health treatment is *never* medically necessary, derogatorily referring to such treatment as "boarding school with some therapy sprinkled on top."

11.      Amazon's denial is a flagrant error and a breach of its obligation under ERISA to provide S.L. with a "full and fair review" of his claim.  Remand in this situation, however, is not appropriate.  Consistent with *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006), S.L. must be permitted the opportunity to submit additional evidence regarding his symptoms and need for treatment in the weeks leading up to May 17, 2016 and thereafter.  The Court should then decide whether S.L.'s treatment at Catalyst met the standards for coverage as defined by the terms of the Plan.

12.      Under either a *de novo* or abuse of discretion review, Defendants' denial of coverage of S.L.'s medically necessary mental health treatment at Catalyst was error. The Court should order all coverage of the previously uncovered treatment, consistent with the terms and conditions of the Plan.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

## IV.  FACTS

13.    S.L. receives his health coverage through his father, who is employed by Amazon.  As a result, S.L. is an ERISA beneficiary under the Plan.  As a beneficiary, he is entitled to the health benefits set forth in the Plan.

14.    The Plan provides coverage for S.L.'s medically necessary mental health services, including residential treatment.  *See **Appendix A***, 2015 Amazon Standard Plan, p. 17.  Medically necessary mental health treatment is treatment intended "to manage or lessen the effects of a psychiatric condition."  *Id.*

15.    Covered services must also be "consistent with published practices that are based on evidence when available or follow clinical guidelines or a consensus of expert opinion published by national mental health professional organizations or other reputable sources.  If no such published practices apply, services must be consistent with community standards of practice."  *Id.*

16.    Covered services must also be delivered by a provider licensed or certified by the state in which the care is provided, and who is providing care within the scope of his or her license.  *Id.*

17.    Under the Plan, services at an RTC will only be covered when the services cannot be provided in a less intensive setting.

18.    As described below, S.L.'s mental health treatment at Catalyst met all of these requirements.  S.L. needed the treatment at Catalyst to manage or lessen the effects of his psychiatric condition, and it was part of a continuum of care, provided at a time when all of the treating providers who evaluated S.L. concluded that the services he needed could not be provided in a less restrictive setting.

19.    S.L. has been diagnosed with multiple psychiatric conditions including Generalized Anxiety Disorder, Oppositional Defiant Disorder, Attention Deficit Disorder as well as substance use disorders.

COMPLAINT (ERISA) – 4

20.     On January 9, 2016, S.L. was treated at Northwest Behavioral Healthcare Services ("NBHS") due to suicidal ideation, self-harm, anxiety, ADHD and escalating substance abuse.   At NBHS he was considered to pose an extremely high risk for relapse, running away and self-harm.

21.     Amazon covered the treatment at NBHS as medically necessary.

22.     On February 18, 2016, at the recommendation of the treating providers at NBHS, S.L. was transferred to Evoke Therapy Programs ("Evoke"), where he remained until May 16, 2016.   Amazon also covered the treatment at Evoke as medically necessary.

23.     When S.L. was discharged from Evoke, his treatment team recommended that he receive continued treatment to manage or lessen his mental health condition at a licensed RTC.  The treatment team did not believe that S.L. was ready to return to an outpatient environment.  The Evoke providers concluded that a return home at that time "would almost certainly result in significant regression and a return to his previous level of functioning."

24.     S.L.'s parents followed the recommendations of the Evoke treatment providers and enrolled S.L. at Catalyst, which was less restrictive than Evoke, and part of a continuum of care designed to lead to S.L.'s successful return home.  S.L. began treatment at Catalyst on May 17, 2016.

25.     Consistent with the Plan's recommendation, Catalyst submitted a pre-authorization request for coverage to Premera in advance of S.L.'s admission, along with extensive medical information.

26.     On May 16, 2016, Premera denied the request, claiming that the information provided by Catalyst was "from 3 months ago and farther back."

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

27.     Premera's internal notes reflect that a Premera representative called Catalyst but gave Catalyst only 1½ hours to attempt to get more recent records from Evoke.

28.     Premera did not contact Evoke directly (even though Premera had authorized the treatment and Amazon had paid for it) nor did Premera contact S.L.'s parents for assistance in obtaining Evoke's records.

29.     Only after S.L.'s parents complained did a Premera medical director call Catalyst.  However, the Premera medical director did not inquire about S.L.'s need for treatment, did not request additional documentation, and did not even inform Catalyst that Evoke's records should be submitted.  The Premera medical director merely confirmed that the initial denial would stand.

30.     No other attempt to communicate with S.L.'s treating providers about his treatment at Evoke or Catalyst is found in Premera's documentation of S.L.'s claim.

31.     S.L.'s parents were not informed that Premera required copies of Evoke's treatment records to determine whether the treatment at Catalyst was medically necessary.

32.     S.L.'s parents appealed the denial of coverage by Premera, providing a lengthy history of his need for treatment, as well as several letters of medical necessity, including one from his treatment team at Evoke.

33.     Premera sent the appeal to a contract medical reviewer.  The medical reviewer concluded that S.L. did not meet the criteria for continued residential treatment on May 17, 2016, the day that S.L. was transferred from Evoke to Catalyst. The contract reviewer claimed to rely upon the InterQual Criteria, but not upon any specific terms and conditions contained in the Plan.

34.     Although the contract medical reviewer claimed to be applying the InterQual Criteria as of May 17, 2016, he ignored the "look-back" time period in the

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

InterQual Criteria, which require consideration of symptoms looking back over the prior 72 hours to 2 weeks, including while S.L. was treated at Evoke.

35.     The contract medical reviewer also ignored evidence of how S.L.'s symptoms met the InterQual Criteria once he was a patient at Catalyst.

36.     On September 26, 2016, Premera denied S.L.'s Level I appeal of the denial of coverage for Catalyst.  Premera maintained that "[S.L.'s] presentation was such that there was no longer any need for the use of residential treatment.  He no longer has symptoms that required treatment in a residential facility," although Premera conceded that "[S.L.] would have benefited from continued treatment."  Premera did not identify where such "continued treatment" could be obtained, other than at Catalyst.  Premera claimed that the denial was generally "based on the plan language and InterQual Criteria," however it failed to identify any plan language as the basis for the denial.

37.     On November 16, 2016, S.L.'s parents appealed Premera's denial again. In the appeal, S.L.'s father objected to Premera's evaluation of whether residential treatment was needed based upon a single day, May 17, 2016, when S.L. was transferred from one residential facility to another.

38.     S.L.'s father also noted the speed at which the contracted medical reviewer had made his decision, reviewing voluminous medical records, making a determination, writing a six-page report, and delivering it to Premera, all in a single day.  S.L.'s father argued that to do so on such an expedited basis was an abuse of discretion.

39.     On December 20, 2016, Premera denied S.L.'s request for coverage again.

40.     For the Level II review, Premera convened a three-person panel consisting of a Premera medical director certified in family medicine, a customer services manager and an operations manager.

COMPLAINT (ERISA) – 7

41. No one on the three-person appeals panel had expertise in mental health treatment.

42. Only one member of the panel, Shawn West, M.D., a family physician, had any medical background. Initially, he explained to the other panelists that he couldn't reach a "comfortable conclusion."

43. One of the non-medical panel members, Steve Woods, expressed that *he does not consider RTCs to ever be medically necessary.* He made this assertion after he reviewed portions of Catalyst's website, which was not part of the administrative record:

> There's no doubt in my mind that this member has some mental health & possibly chemical dependency issues that he needs help with. The problem I have with RTC's (*and why I don't think they're medically necessary*) is that a majority of their curriculum is spent doing things which on the surface don't appear to be dealing with those issues. It's basically a boarding school with some therapy sprinkled on top.

44. There is no record that Mr. Woods contacted anyone at Catalyst to confirm or refute the conclusions that he drew from his review of the Catalyst website.

45. After Mr. Woods expressed his opinion, the other two panelists agreed.

46. Only Dr. West, the medical reviewer, linked his decision to deny coverage to the InterQual Criteria, but he also limited his opinion to S.L.'s symptoms "at admission." No medical reviewer referenced any part of S.L.'s Plan as the basis for their denial.

47. On December 20, 2016, Premera issued the Level II denial letter. The Level II denial letter asserted that S.L.'s symptoms did not meet the InterQual Criteria for medical necessity "at admission."

48. It did not inform S.L. or his parents that at least one of Premera's Level II appeals panelists determined that RTCs are *never* medically necessary.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303 FAX (206) 223-0246

49.     The denial letter did not describe how S.L.'s symptoms did not demonstrate "severe functional impairment" under the InterQual Criteria, nor why the isolated date of May 17, 2016, was selected for review.

50.     The denial letter failed to identify, as the basis for the denial, any terms or conditions in the Plan that were not met.

51.     All conditions precedent to the filing of this action have been performed or have occurred.  S.L. has exhausted his administrative remedies, and the filing of this action is timely.

## V.   CLAIMS

**FIRST CLAIM – CLAIM FOR BENEFITS, ENFORCEMENT OF RIGHTS AND CLARIFICATION OF FUTURE BENEFITS RIGHTS UNDER ERISA § 502(A)(1)(B), 29 U.S.C. § 1132(A)(1)(B)**

52.     Plaintiff re-alleges all paragraphs above.

53.     Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), S.L. is entitled to (1) enforce his rights under the terms of the Plan, and (2) clarify his right to future benefits under the terms of the Plan.

54.     Specifically, and consistent with the terms and conditions of the Plan, S.L. seeks coverage of all mental health treatment at Catalyst, a licensed residential treatment center that provided medically necessary treatment to S.L.

**SECOND CLAIM – CLAIM TO ENFORCE TERMS OF THE PLAN UNDER ERISA § 502(A)(3), 29 U.S.C. § 1132(A)(3)**

55.     Plaintiff re-alleges all paragraphs above.

56.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan."  S.L. seeks to enjoin Amazon from continuing to deny his medically necessary residential mental health treatment based upon its view

COMPLAINT (ERISA) – 9

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

of his condition on a single day, May 17, 2016, when he was transferred from one residential mental health facility to another.

57.   ERISA § 503(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms.  To the extent full relief is not available under ERISA § 503(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B), or ERISA § 503(a)(2), 29 U.S.C. § 1132(a)(2), then S.L. seeks all equitable remedies including, without limitation, injunction.

### THIRD CLAIM – CLAIM FOR ATTORNEY FEES AND COSTS UNDER ERISA § 502(G)(1), 29 U.S.C. § 1132(G)(1)

58.   Plaintiff re-alleges all paragraphs above.

59.   S.L. is entitled to his attorney fees and costs under ERISA § 302(g)(1), 29 U.S.C. § 1132(g)(1).

### VI.  DEMAND FOR RELIEF

WHEREFORE, S.L. requests that this Court:

1.   Enter judgment in favor of S.L. establishing his right to receive coverage of his medically necessary residential mental health treatment at Catalyst under the terms of the Plan;

2.   Enter judgment in favor of S.L. for damages, in an amount to be proven at trial, due to the failure to provide benefits due under the Plan;

3.   Award S.L. his attorney fees and costs; and

4.   Award such other relief as is just and proper.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

DATED:  September 4, 2018.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER

By:   _s/ Eleanor Hamburger_
By:   _s/ Richard E. Spoonemore_
Eleanor Hamburger (WSBA #26478)
Richard E. Spoonemore (WSBA #21833)
  701 Fifth Avenue, Suite 2560
  Seattle, WA  98104
  Telephone: (206) 223-0303
  Facsimile: (206) 223-0246
  ehamburger@sylaw.com
  rspoonemore@sylaw.com

MEGAN E. GLOR ATTORNEYS AT LAW

By:   _s/ Megan E. Glor_
Megan E. Glor (OSB #930178)
_(pro hac vice application to follow)_
  707 NE Knott Street, Suite 101
  Portland, OR  97212
  Telephone: (503) 223-7400
  Facsimile: (503) 751-2071
  megan@meganglor.com

Attorneys for Plaintiff S.L.

COMPLAINT (ERISA) – 11

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246