THE HONORABLE JUDGE ROBERT S. LASNIK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| S.L., by and through his parents and guardians, J.L. and L.L., <br><br> Plaintiff, <br><br> v. <br><br> PREMERA BLUE CROSS; AMAZON CORPORATE LLC GROUP HEALTH AND WELFARE PLAN; and AMAZON CORPORATE LLC, <br><br> Defendants. | Case No.: 2:18-cv-01308-RSL <br><br> **DEFENDANTS' MOTION TO STRIKE REPORT OF DR. LOUIS J. KRAUS** <br><br> **NOTED FOR: Friday, December 20, 2019** |

DEFENDANTS' MOTION TO STRIKE
REPORT OF DR. LOUIS J. KRAUS

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

I.     INTRODUCTION

Defendants Premera Blue Cross, Amazon Corporate LLC Group Health and Welfare Plan, and Amazon Corporate LLC (collectively, "Defendants") move to strike the September 4, 2019 Report of Dr. Louis J. Kraus, M.D. offered by S.L., J.L., and L.L. (collectively "Plaintiffs").

This case arises under the Employment Retirement Income Security of Act of 1974 ("ERISA"). Plaintiffs seek coverage under the Amazon Corporate LLC Group Health and Welfare Plan (the "Plan") for S.L.'s confinement at a residential treatment center in Utah when he was a minor. Premera concluded that residential treatment was not medically necessary to treat S.L.'s condition, and two separate independent child and adolescent psychiatrists agreed.

It is undisputed that the appropriate standard of review in this case is abuse of discretion. When applying an abuse of discretion standard, the Court's review of the coverage determination is to be based on the administrative record alone. The only two exceptions to this general rule are (1) when extraneous information is needed to determine the existence and nature of any conflict of interest; and (2) when procedural irregularities prevented the development of a full administrative record.

Plaintiffs served the Forensic Assessment of Dr. Louis J. Kraus, M.D. (the "Kraus Report") on Defendants on September 5, 2019. The Kraus Report generally summarizes various sources of information relevant to the generally accepted standards of care for determining the appropriate level of service and intensity for children and adolescents with mental health disorders. Dr. Kraus then argues that, in his opinion, Premera's application of the InterQual Criteria was contrary to those generally accepted standards of care. Specifically, Dr. Kraus condemns the InterQual's focus on whether symptoms have occurred within the past 72 hours as contrary to generally accepted practice.

The Kraus Report does not fall within either of the two exceptions for admission of evidence outside the administrative record under an abuse of discretion standard, and should be stricken. First, as more fully detailed in Premera's Opposition to Plaintiffs' Motion to Compel Discovery, no conflict of interest exists here. Dkt. 31 at 3-5, 7-9. And, even if the Court was

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 1

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

concerned about a potential conflict of interest, the Kraus Report does not purport to address whether any conflict of interest existed that could have affected Premera's coverage determination, and so would not assist the Court in that determination. Second, Plaintiffs have not identified any procedural irregularities or argued that Premera otherwise prevented the development of a full administrative record. Even if they had, the Kraus Report does not evaluate or provide the Court with any information that should have been part of the administrative record but was not due to some fault of Premera.

Lastly, even if this Court were to determine that it should apply the de novo standard of review (rather than abuse of discretion), the Kraus Report should not be admitted under that standard because Plaintiffs have not shown that the circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision.

The Court should strike the Kraus Report.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Plan is Self-Insured and Premera is the Claims Administrator.

Plaintiff S.L. is a dependent of his father J.L., an employee of Amazon.com, Inc. and a participant in the Plan. Dkt. 1 at ¶¶ 1, 3-4. Amazon Corporate LLC is the "Plan Sponsor" and "Plan Administrator" and is a fiduciary under ERISA. Dkt. 1 at ¶¶ 3-4.

The Group has contracted with Defendant Premera Blue Cross to process claims and to perform other administrative duties. Dkt. 1-1 at 3. The Summary Plan Description refers to Premera as the "Claims Administrator" and delegates to Premera "the discretionary authority to determine claims for benefits and to construe the terms used in [the Plan]." *Id.*

### B.   Plaintiffs Seek Reimbursement for S.L.'s Confinement at Catalyst Residential Treatment Center.

In 2016, when S.L. was a minor, his parents J.L. and L.L. sent him to Catalyst Residential Treatment ("Catalyst") in Brigham City, Utah. Dkt. 1 at 1. According to Catalyst, the purpose of its program is to "to provide students with a balanced life-style. The right mix of therapy, recreation, art, music, academics, and experiential opportunities." http://catalystrtc.com/ (last

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 2

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

reviewed 10/11/2019). The issue in this case is whether those services are covered by the Plan. Dkt. 1 at ¶ 8.

### C. The Plan Covers Only Medically Necessary Services.

The Plan covers only medically necessary services. Dkt. 1-1 at 76. The Summary Plan Description provides that "Premera Blue Cross has developed or adopted guidelines and medical policies that outline clinical criteria used to make medical necessity determinations." Dkt. 1-1 at 46. At the time of S.L.'s claims and appeals, Premera utilized a Medical Policy licensed from InterQual, which develops evidence-based care guidelines for use by healthcare and government organizations. *Id.* [SL_PRE_002700-18]; [SL_PRE_001858]; [SL_PRE_002704].

### D. Plaintiffs' Claims for Residential Treatment Were Reviewed and Denied by Premera and Two Independent Reviewers.

On May 13, 2016, Catalyst submitted a request to Premera for preauthorization of coverage in advance of S.L.'s anticipated admission to Catalyst. [SL_PRE_000624]; [SL_PRE_002042]; Dkt. 1 at ¶ 25. On May 16, 2016, Premera denied the request because the information provided to Premera was "from 3 months ago and farther back" and therefore there was no basis for concluding that further residential treatment at Catalyst was currently medically necessary. Dkt. 1 at ¶ 26; [SL_PRE_001858]. Therefore, Premera advised that "[i]f you have this service, you will be responsible for the full cost." [SL_PRE_001858].

On September 16, 2016, Plaintiffs initiated a Level I appeal and supplemented the record with numerous records. [SL_PRE_000375-385]. Premera submitted Plaintiffs' Level I appeal and records to Medical Review Institute of America ("MRIoA"), an independent review organization, for review by a child psychiatrist. Dr. William Holmes, a physician Board Certified in Child & Adolescent Psychiatry, reviewed Plaintiffs' Level I appeal submission and other relevant claim information, including the Psychiatric Evaluation, Master Treatment Plan, treatment notes and logs from both a wilderness therapy program at Evoke Therapy Programs in Oregon attended by S.L., and Catalyst, the Plan language, and Premera's Medical Policy—the InterQual 2015 Residential and Community-Based Treatment Criteria. [SL_PRE_000624-28].

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 3

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

Dr. Holmes concluded as follows: "The service provided (Ongoing Residential Treatment 5/17/16-ongoing) is not medically necessary based on the provided medical policy and plan language." [SL_PRE_000625]. Dr. Holmes found that "[a]s of 5/17/16 the patient did not meet any of the symptom severity criteria that would require the use of residential treatment center level of care." *Id.* Dr. Holmes also noted that "[i]n order to meet criteria for medical necessity," at least one of the symptoms identified in the InterQual Criteria had to be present, and that he had found that "[o]n 5/17/16 none of these areas of concern were present." [SL_PRE_000625-26]. Consequently, on September 26, 2016, Premera again concluded that S.L.'s treatment at Catalyst was not medically necessary. [SL_PRE_001185-87].

On November 16, 2016, S.L.'s initiated a Level II appeal. [SL_PRE_000939]. The crux of Plaintiffs' argument was that Dr. Holmes's conclusion that S.L. "did not need residential treatment" was "based upon an observation on one particular day, May 17, 2016." [SL_PRE_000943]. Premera's Level II appeal process included a panel review of S.L.'s file. [SL_PRE_001189]. The panel reviewed all material submitted with Plaintiffs' Level I and Level II appeals, Dr. Holmes's findings as the Independent Physician Reviewer, the Premera Medical Policy, S.L.'s medical records, and the Plan language. *Id.*

On December 20, 2016, Premera the Level II confirmed that the services were not medically necessary because "the request does not meet the InterQual® Criteria for medical necessity in terms of the documented symptoms at admission. Specifically, criteria were not met for severe functional impairment and therefore coverage for residential treatment at Catalyst." *Id.* "This decision is based on the plan language, which excludes coverage on any service or supply determined to be not medically necessary." *Id.*

On July 7, 2017, Plaintiffs requested an independent external review of Premera's decision. [SL_PRE_000296]. Premera sent the review to the review organization selected by the Washington Insurance Commissioner, The Center for Health Dispute Resolution/MAXIMUS, Inc., which reviewed for Plaintiffs' claim. [SL_PRE_001566]. The independent psychiatrist who reviewed the Plaintiffs' appeal "is board certified in psychiatry

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 4

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

with sub-specialty certification in child and adolescent psychiatry and is actively practicing. On July 19, 2017, the IRO, MAXIMUS upheld the determination that inpatient residential treatment was not medically necessary for S.L. [SL_PRE_001551]. The IRO reviewed the entire record including additional information provided by Catalyst after the Level II appeal. *See* [SL_PRE_001553]. MAXIMUS used "an evidence-based instrument, "the Child and Adolescent Level of Care Utilization System (CALOCUS),"[1] and noted that such a tool "is indispensable in determining necessary level of care for children." [SL_PRE_001556-57]. MAXIMUS applied CALOCUS to assess risk of harm, functional status, comorbidity (co-occurring serious medical problems), recovery environment level of stress, level of support of the recovery environment, resiliency and treatment history, acceptance and engagement of the patient, and acceptance and engagement of the parents.

Scoring each of these categories, the IRO came up with a composite score of 17 to 18, which on the CALOCUS scale correlates with "intensive outpatient services," not residential treatment. [SL_PRE_001557]. Accordingly, the IRO concluded that "from 5/17/16 forward, . . . [t]he Health Plan's determination that the services at issue were not and are not medically necessary for the patient was not unreasonable or inconsistent with sound, evidence-based medical practice pursuant to RCW 48.43.535." [SL_PRE_001556-57]. Maximus did not cite the InterQual Criteria in its report.

### III. THE KRAUS REPORT

The Kraus Report is dated September 4, 2019, and purports to address the following questions:

---

[1] MAXIMUS also cited the following medical references as support for its decision: (1) American Academy or Child and Adolescent Psychiatry and American Association of Community Psychiatrics: Child and Adolescent Level of Care Utilization System; (2) Barth, R., et al. Outcomes for youth receiving intensive in-home therapy or residential care: A comparison using propensity scores. Am J Orthopsychiatry, 2007 Oct; 77(4):497-505.

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 5

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

> 1. Did [S.L.] meet criteria for coverage of residential treatment at Catalyst Residential Center under the Premera Blue Cross contract definition?
>
> 2. What are the generally accepted standards for determining the appropriate level of service and intensity for children and adolescents with mental health disorders?
>
> 3. Did the criteria applied by Premera to evaluate S.L.'s request for coverage of residential treatment, the Premera Blue Cross Utilization Management Guideline Behaviors health: Psychiatric Residential Treatment effective dare [sic] February 10, 2015, comply with these generally accepted standards?

Kraus Report at 1.

The Kraus Report generally summarizes what are, in his opinion, the generally accepted standards for determining the appropriate level of service for children and adolescents with mental health disorders. Kraus Report at 13-19. Dr. Kraus then identifies several ways in which, he believes, the InterQual Criteria as applied by Premera differs from those generally accepted standards; including arguing that the InterQual Critera improperly focuses on symptoms that have occurred within the past 72 hours. Kraus Report at 19-22; *see, e.g.*, Kraus Report at 19 ("Acute symptomology not noted within the last 72 hours does not 'count' towards a showing of medical necessity under InterQual. This is contrary to generally accepted practice."). The Kraus Report does not identify any information that was not, but allegedly should have been, part of the administrative record, nor does it discuss any potential conflicts of interest.

### III.   ARGUMENT

**A.   Plaintiffs May Not Admit Evidence Outside the Administrative Record Because the Standard of Review In This Case Is Abuse of Discretion.**

The Plan Documents make clear that the applicable standard of review in this case is abuse of discretion. As such, the Court is limited to reviewing the administrative record before

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 6

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

the plan administrator in determining whether the administrator abused its discretion in denying coverage. "[I]n general, a district court may review only the administrative record when considering whether the plan administrator abused its discretion . . . ." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 970 (9th Cir. 2006). Plaintiffs' Kraus Report—written after the inception of this case—should be excluded.

### 1. The standard of review in this case here is abuse of discretion.

It is undisputed that "[b]ased upon the Plan documents Defendants have produced, the applicable standard of review in this case is abuse of discretion." Dkt 28 at 14.

### 2. In ERISA cases reviewed under an abuse of discretion standard, the courts are limited to the administrative record.

In ERISA cases analyzed under abuse of discretion, the Court's review is generally limited to the record before the plan administrator. *Jebian v. Hewlett-Packard Co. Emp. Ben. Organization Income Protection Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003) ("[U]nder an abuse of discretion standard our review is limited to the record before the plan administrator….") (citation omitted); *see also Taylor v. Reliance Standard Life Ins. Co.*, 837 F. Supp. 2d 1194, 1197 & n.1 (W.D. Wash. 2011) (refusing to consider declaration and additional documents submitted by plaintiff outside the administrative record because "[j]udicial review of an ERISA plan administrator's decision on the merits is limited to the administrative record."). There are two exceptions to this general rule, neither of which applies here.

### 3. The Kraus Report is not relevant to determine whether any conflict of interest exists.

The first exception is that [t]he district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest . . . ." *Abatie*, 458 F.3d at 970. However, once the district court has determined the existence of any conflict, "the decision on the merits . . . ***must*** rest on the administrative record." *Id.* (emphasis added) (citation omitted).

As detailed in Premera's Opposition to Plaintiffs' Motion to compel Discovery, no such

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 7

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

conflict of interest exists here. Dkt. 31 at 3-5, 7-9. Even if the Court was concerned about some potential conflict of interest, the Kraus Report does not purport to address any issues pertaining to whether a conflict of interest exists. *See* Kraus Report at 1 (identifying the questions the Report purports to address). Thus, the Kraus Report is not admissible under this exception.

    **4.     There were no procedural irregularities that prevented the development of a full administrative record, and the Kraus Report does not provide any additional information.**

The second exception allows a district court to consider evidence outside the administrative record if "procedural irregularities have prevented full development of the administrative record." *Russell v. Comcast Corp.*, No. C08-309Z, 2009 WL 666592, at *5 (W.D. Wash. Mar. 10, 2009) (quoting *Abatie*, 458 F.3d at 973).

As described in Section II.D, *supra*, Plaintiffs' claims were reviewed (and denied) by Premera and by two independent reviewers. Plaintiffs were permitted to provide all information they believed relevant to the coverage determination, which information was considered at each stage of the determination process. Plaintiffs have not identified any procedural irregularities in this case. And, even if Plaintiffs had identified potential procedural irregularities that might have prevented the development of a full administrative record, the Kraus Report does not discuss any such irregularities. C*f. Galloway v. Lincoln Nat'l Life Ins. Co.*, No. C09-1479JLR, 2010 WL 2679894, at *8 (W.D. Wash. July 2, 2010) (admitting declaration that was not part of administrative record because it provided evidence of procedural irregularities). Nor does the Kraus Report provide the Court with information Plaintiffs contend Defendants should have considered during their review, but did not.

Instead, the Kraus Report largely argues that the InterQual criteria used by Premera in denying Plaintiffs' claims are contrary to generally accepted practice for various reasons. *See* Kraus Report at 19-22. However, MAXIMUS, who performed the independent external review of Premera's decision, did not even cite the InterQual Criteria in its report. In fact, MAXIMUS cited, among other things, the CALOCUS criteria touted by Dr. Kraus in his Report. *See* [SL_PRE_001556-57]; Kraus Report at 17-18, 20. Thus, the Kraus Report is not admissible

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 8

under this exception.

5.  **The Kraus Report should be excluded because neither of the two exceptions for allowing evidence outside the administrative record applies.**

As neither of the two exceptions for allowing in evidence outside the administrative record apply here, the Kraus Report should be excluded. *See, e.g.*, *Deloach v. San Diego Gas & Elec. Co.*, No. 07CV1046-LAB (CAB), 2008 WL 4426010, at *10 (S.D. Cal. Sept. 24, 2008) (refusing to consider declarations submitted by plaintiff because the court was applying an abuse of discretion standard); *Neathery v. Chevron Texaco Corp. Grp. Accident Policy No. OK826458*, No. 05 CV 1883 JM (CAB), 2007 WL 1110904, at *6 (S.D. Cal. Apr. 9, 2007) (denying plaintiff's motion to supplement the record with expert reports not part of the administrative record because "[u]nder [the abuse of discretion] standard applied, the court's review is limited to the administrative record" and "[n]either exception under *Abatie* for admission of extrinsic evidence applies.").

B.  **Even if the Court determines that it should apply a *de novo* standard of review, the Kraus Report is inadmissible because it is not necessary for the Court to conduct its review.**

Even under a *de novo* review standard, extrinsic evidence is allowed in "*only* when circumstances *clearly establish* that additional evidence is *necessary* to conduct an adequate de novo review of the benefit decision." *Opeta v. Nw. Airlines Pension Plan for Contract Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995)) (internal quotations omitted). In *Opeta*, the Ninth Circuit listed the "exceptional circumstances" in which the consideration of additional evidence may be necessary:

> [C]laims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 9

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

*Id.* (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993)); *see also Mongeluzo*, 46 F.3d at 944 ("In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator … at the time of the determination.") (citation omitted).

Even if the Court determines that a *de novo* standard applies, the Court should still exclude the Kraus Report because the Kraus Report is not necessary for the Court to adequately review the administrator's decision. None of the "exceptional circumstances" listed in *Opeta* are present here, and, even if they were, the Kraus Report would not assist the Court in its review of the benefit decision.

First, the claims at issue do not "require consideration of complex medical questions or issues regarding the credibility of medical experts." And, even if they did, Dr. Kraus does not purport to discuss any such complex medical questions, nor does he discuss the credibility of any medical experts who participated in the claims review process.

Second, the evidentiary record here is not so limited as to allow for the submission of extrinsic evidence. Plaintiffs were permitted to—and did—provide Defendants with numerous records for consideration of their claims, in addition to records from Catalyst and Evoke. *See* Dkt. 1 at ¶¶ 31, 32; Dkt. 31 at 3-5.

Third, Dr. Kraus's report does not provide the Court with any information regarding interpretation of the terms of the Plan, nor is any such additional information necessary.

Fourth, as discussed in Premera's Opposition to Plaintiffs' Motion to Compel Discovery, the payor and the administrator are not the same entity here—Premera is the Claims Administrator and the Plan is self-funded by Amazon and Subsidiaries ("the Group"), who is financially responsible for the payment of plan benefits. *See* Dkt. 31 at 2. Fifth, Plaintiffs' claims would not have been insurance contract claims prior to ERISA.

Finrally, the Kraus Report is not "additional evidence that the claimant could not have presented in the administrative process." Plaintiffs were permitted to submit all relevant information during the administrative process, and there is no indication, either from Plaintiffs

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 10

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

or in the Kraus Report, that Plaintiffs are now seeking to admit evidence they could not have presented during that process.

Thus, none of the "exceptional circumstances" allowing for the consideration of evidence outside the administrative record apply here. Instead, Plaintiffs seek to provide the Court with a new opinion—dated a year after this case was filed and more than two years after MAXIMUS' independent external review affirmed the denial of coverage—which merely evaluates the same evidence already before the Court and argues that Premera and the independent physician reviews erroneously relied upon and/or applied the InterQual medical policies to determine that S.L.'s treatment was not medically necessary. Not only is this contrary to the rules regarding the consideration of evidence in ERISA cases, but its analysis is fundamentally flawed.

There is no dispute that Premera and the independent physician reviews did not rely solely on the InterQual medical policies to determine that S.L.'s treatment was not "medically necessary." Further, courts and commentators repeatedly identify the InterQual Criteria as "nationally recognized," and "widely used," and have cited the InterQual Criteria as support for their decisions. *See Norfolk Cty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 877 F.3d 687, 690 (6th Cir. 2017) ("To determine whether a person needs inpatient or outpatient care, most hospitals use one of two systems: the InterQual Criteria or the Milliman Care Guidelines. Both were developed by independent companies with no financial interest in admitting more inpatients than outpatients. The InterQual Criteria were written by a panel of 1,100 doctors and reference 16,000 medical sources. . . . About 3,700 hospitals use InterQual and about 1,000 use Milliman—over 75% of hospitals nationwide.")

Admission of the Kraus Report is thus improper and would not assist the Court in its analysis. *See, e.g.*, *Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006) (affirming district court's decision to exclude expert report which "merely revie[ed] medical records already contained in the record"); *Mullaney v. Paul Revere Life Ins. Co.*, No. CV16-263RAJ, 2018 WL 3328402, at *3 (W.D. Wash. July 6, 2018) (excluding physical capacity evaluation report because it was dated "over one year after this lawsuit was

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 11

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

filed and almost two years after Defendants' [sic] denied Plaintiff's appeal of his claims" and because it was "not part of the administrative record"); *Griffin v. Wells Fargo Bank Nw., N.A.*, No. CV 08-509-S-EHL-MHW, 2009 WL 10678682, at *2 (D. Idaho Oct. 22, 2009) (striking report from vocational expert because "Plaintiff has not set forth any reasons why this evidence is necessary" and because the report "does not satisfy any of the exceptional circumstances" required for admission);  Thus, the Court should strike the Kraus Report.

### IV.   CONCLUSION

For the foregoing reasons, the Court should strike the Kraus Report submitted by Plaintiffs.

DATED this 4th day of December, 2019.

KILPATRICK TOWNSEND & STOCKTON LLP

By */s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
gpayton@kilpatricktownsend.com
Telephone: (206) 626-7713
Facsimile: (206) 260-8946

*Counsel for Defendants Premera Blue Cross; Amazon Corporate LLC Group Health and Welfare Plan; and Amazon Corporate LLC*

DEFENDANTS' MOTION TO STRIKE
REPORT OF LOUIS J. KRAUS - 12

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of December, 2019, I electronically filed the foregoing **MOTION TO STRIKE REPORT OF LOUIS J. KRAUS** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

**Eleanor Hamburger**
SIRIANNI YOUTZ SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WA 98104
206-223-0303
Fax: 206-223-0246
Email: ehamburger@sylaw.com

**Richard E Spoonemore**
SIRIANNI YOUTZ SPOONEMORE HAMBURGER
701 FIFTH AVENUE, SUITE 2560
SEATTLE, WA 98104
206-223-0303
Fax: 206-223-0246
Email: rspoonemore@sylaw.com

**Megan E Glor**
MEGAN E. GLOR, ATTORNEYS AT LAW
707 NE KNOTT STREET, STE 101
PORTLAND, OR 97212
503-223-7400
Fax: 503-751-2071
Email: megan@meganglor.com

DATED this 4th day of December, 2019.

**Kilpatrick Townsend & Stockton LLP**

By: /s/ Gwendolyn C. Payton
    Gwendolyn C. Payton, WSBA #26752
*Counsel for Defendants Premera Blue Cross, Amazon Corporate LLC Group Health and Welfare Plan, and Amazon Corporate LLC*

CERTIFICATE OF SERVICE - 13

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 626-7713  FAX: (206) 260-8946