THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.L. by and through his parents and guardians, J.L. and L.L., <br><br>Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS, AMAZON CORPORATE LLC GROUP HEALTH AND WELFARE PLAN, and AMAZON CORPORATE LLC,<br><br>Defendants. | Case No. 2:18-cv-01308-RSL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE REPORT OF DR. LOUIS J. KRAUS**<br><br>**Noted for Consideration:**<br>**December 20, 2019** |

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE REPORT OF DR. LOUIS J. KRAUS
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

## I. INTRODUCTION

Long after briefing on Plaintiff's Motion to Compel closed, Defendants move to strike the Expert Report of Louis J. Kraus, M.D., which was filed by Plaintiff S.L. in support of his Motion to Compel. *See* Dkt. No. 29-4. Defendants offer no explanation or "good cause" for their failure to object to Dr. Kraus's Report in their earlier opposition briefing. *See* LCR 7(g); *see generally* Dkt. No. 38. Nearly eight weeks later, Defendants' motion is untimely and should be denied.

Defendants' Motion may be aimed at preventing the Court from considering Dr. Kraus's Report in support of Plaintiff's anticipated summary judgment motion or at trial. If so, Defendants' Motion should be denied as premature. *See Nolan v. Heald Coll.,* 551 F.3d 1148, 1155 (9th Cir. 2009); *Hoffman v. Screen Actors Guild Producers Pension Plan,* 757 F. App'x 602, 605 (9th Cir. 2019) (Evidence of conflict of interest and bias may be presented at summary judgment; if it materially affects the abuse of discretion standard, then the evidence must be considered at trial). Only after conflict of interest discovery is conducted and summary judgment briefing is complete, may the Court determine whether Dr. Kraus's Report "materially affects" the abuse of discretion standard.

Nonetheless, there is substantial evidence at this point that Dr. Kraus's expert testimony, taken together with the procedural and substantive errors in this case, demonstrates Premera's conflict of interest resulted in bias in its decision-making. Dr. Kraus's Report addresses how the InterQual criteria, as applied by Defendants throughout the administrative appeals process, are inconsistent with generally accepted standards of care. His expertise is necessary to a fully developed administrative record. Since Dr. Kraus opines about the failures of Premera's administrative process, S.L. could not have procured his expert Report until the process was complete. Defendants' Motion to Strike should be denied.

## II. STATEMENT OF MATERIAL FACTS

Plaintiff S.L. incorporates the description of material facts in the pending Motion to Compel Discovery, Dkt. Nos. 28, pp. 3-12; 33-1, pp. 2-8.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 1
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

A.      **S.L.'s Administrative Appeal.**

Premera incorrectly implies that S.L.'s parents suddenly decided to admit S.L. to Catalyst on May 13, 2016. Dkt. No. 38, p. 3. Premera knows well that S.L. had been in a serious crisis since January 9, 2016, when he was admitted to Northwest Behavioral Healthcare Services, a hospitalization Premera authorized as medically necessary and that the Plan paid due to S.L.'s suicidality. On February 18, 2016, S.L. was transferred to Evoke Therapy Programs at the recommendation of treating providers at NBHS. Premera also authorized that residential treatment as medically necessary and the Plan paid for it. S.L. remained at Evoke until May 16, 2016, when he was transferred to Catalyst, again following the recommendation of all treating providers. This was a "step down" to a less restrictive residential setting, designed to lead to S.L.'s successful return home. *See* Dkt. No. 29-10, p. 5. No treating provider determined S.L. was able to return home or to a different less restrictive program at that time.

When denying S.L.'s pre-authorization request for Catalyst, Premera asserted there was a lack of information about S.L.'s "recent and current condition." Dkt. No. 29-6, p. 1. Premera could have requested the information from Evoke (after all, it was paying for S.L.'s treatment there), but instead asked the new provider, Catalyst, to gather the information within just ***90 minutes*** before the denial was issued. Dkt. No. 29-7, p. 3. Premera made no attempt to get the records it claimed it needed.

Premera also misleadingly claims it had two "independent review organizations" consider S.L.'s appeals. Dkt. No. 38, p. 3. Premera's contracted file reviewer, Dr. William Holmes, does not act as an "independent review organization" while working for Premera. A certified Independent Review Organization ("IRO") reviews external appeals under strict conditions established by the Washington law. *See* RCW 48.43.535. Premera's contract reviewer does not act as certified IRO when Premera hires him to perform an internal evaluation outside the statutory process. To claim that Premera's contract reviewer is an "independent review organization" in this situation is highly misleading.

| | |
|---|---|
| PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DR. KRAUS'S REPORT - Page 2<br>[Case No. 2:18-cv-01308-RSL] | Megan E. Glor, Attorneys at Law<br>707 NE Knott Street, Suite 101<br>Portland, OR  97212<br>503-223-7400 |

Premera's Dr. Holmes misapplied the InterQual criteria in reviewing S.L.'s appeal. He concluded that on a single day, May 17, 2016 – the day of S.L.'s transfer to Catalyst – his symptoms did not require residential treatment. *See* Dkt. No. 29-11, p. 3 ("the patient's presentation on 5/17/16 did not require the use of a residential treatment setting…"). Dr. Holmes did not contact any of S.L.'s treating providers or his parents. *Id.* He claims to have reviewed the voluminous file (by the first appeal, S.L.'s parents had provided some records from Evoke), made a determination and wrote a five-page report, all in a single day, calling into question whether he conducted a proper review. *See* Dkt. No. 29-12, p. 6; *Jebian v. Hewlett Packard Empl. Benefits Org. Income Prot. Plan,* 349 F.3d 1098, 1107 (9th Cir. 2003) ("ERISA is designed to promote a good-faith bilateral exchange of information on the merits of claims, not hasty decision-making by administrators….") (citation omitted).

No mental health specialist participated or was consulted in Premera's review of S.L.'s second-level appeal. *See* Dkt. No. 29-15, p. 1 (Premera's Level II panel consisted of a medical director certified in family medicine and two non-medical Premera employees). *See* 29 C.F.R. § 2560.503-1(h)(3)(iii). The single physician panelist, Shawn West, M.D., admitted to "struggling with this appeal" and turned to the non-medical panelists to see if they had "come to a comfortable conclusion." Dkt. No. 29-16, pp. 1-2. One of them, Steve Woods, ignored the Plan language, the InterQual criteria, generally accepted medical standards and S.L.'s medical record and asserted, referring to residential treatment centers ("RTC"), "I don't think they're medically necessary," and concluded Catalyst, a licensed RTC, was a "boarding school with some therapy sprinkled on top." *Id.,* p. 1. Once Mr. Woods stated his position, the other two panelists concurred, with little or no analysis. *Id.,* pp. 2-3.

To shore up its procedurally and substantively flawed process, Premera argues this Court should consider the official IRO decision, issued *after* S.L. exhausted the Plan's internal appeals. *See* Dkt. No. 38, pp. 4-5. The IRO decision is not one to which the Court may afford any deference, since it is *not* a decision by the Plan administrator and it occurred outside the ERISA

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 3
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

administrative review process. *Yox v. Providence Health Plan*, 659 F. App'x 941, 943 (9th Cir. 2016) (finding that a health plan administrator's claim denial was an abuse of its discretion based upon procedural, substantive and structural issues, despite the findings of an IRO decision.)[1] The IRO decision did not consider or apply the InterQual criteria or the terms of S.L.'s plan. *See* Dkt. No. 38, p. 5.

### B.  Facts Related to Dr. Kraus's Report.

Dr. Kraus's Report was timely produced under the Court's Case Scheduling Order. *See* Dkt. No. 25, p. 1.  Hamburger Decl., ¶2.  Defendants did not object to Dr. Kraus's report at that time. *Id.*  Defendants did not obtain their own expert witness. *Id.*  They did not seek any discovery related to Dr. Kraus before the discovery cutoff. *Id.*

Plaintiff S.L. relied upon Dr. Kraus's expert opinion when moving to compel discovery. *See* Dkt. No. 28, p. 3; Dkt. No. 29-4.  Defendants did not object to the Court's consideration of Dr. Kraus's Report at that time or move to strike the Report in their opposition briefing. *See generally,* Dkt. No. 31 (ignoring Dr. Kraus's report).

### III.  ARGUMENT

### A.  Premera's Motion to Strike is Untimely.

Under Local Civil Rule 7(g), Premera was required to bring a Motion to strike Dr. Kraus's Report when it was filed in support of Plaintiff's Motion to Compel. *See* LCR 7(g).  Defendants did not address Dr. Kraus's Report at that time. *See* Dkt. No. 31.  Defendants offer no "good cause" explanation for their failure to timely move to strike, and they do not seek relief from the requirements of LCR 7(g) now. *See generally* Dkt. No. 38.  This Motion is filed too late and should be denied on that basis.  Defendants may not use this improperly-filed motion to get a second chance to oppose Plaintiff's pending Motion to Compel. *Compare* Dkt. No. 38 *with* Dkt. No. 31.

---

[1] In *Yox,* the IRO decision had supported the defendant's coverage denial. *Id.,* 2013 U.S. Dist. LEXIS 32761, *3.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 4
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

Alternatively, Defendants' Motion is a pre-emptive effort to preclude Plaintiff from using Dr. Kraus's Report in support of Plaintiff's anticipated motion for summary judgment or at trial. If that is Defendants' intention, their Motion is premature. This Court should not entertain a motion to exclude Dr. Kraus's Report until *after* Plaintiff S.L. has completed conflict discovery *and* fully briefed how Dr. Kraus's expert opinion, together with evidence of other substantive and procedural irregularities, demonstrates that Premera's structural conflict of interest has resulted in bias in its claim review and denial in this case. *See Nolan v. Heald Coll.,* 551 F.3d 1148, 1155 (9th Cir. 2009). In *Nolan,* the trial court considered evidence outside of the administrative record on summary judgment, but concluded that it did not rise to the level of a "*prima facie* case of misconduct." *Id.* at 1152. The Ninth Circuit reversed, holding the district court erred:

> The evidence permitted inferences of bias that could have materially affected the abuse of discretion standard of review in this case, particularly at summary judgment. If that evidence was material, [the plaintiff] was entitled to have the evidence examined by the district court at a bench trial, where a full and detailed inquiry into the bias of Network Medical Review and Drs. Jares and Silver – including the opportunity for additional evidence or testimony – would allow the court as trier of fact to effectively determine bias with finality.

*Id.* at 1155. In sum, this Court should wait until summary judgment briefing is complete to determine whether the evidence as a whole, including Dr. Kraus's Report, should materially affect the deference afforded Defendants in the Court's abuse of discretion review. If it does, then Plaintiff S.L. is entitled to present this evidence at a bench trial, not summary judgment. *Id.* ("If we were to allow a district court to weigh new evidence bearing on a conflict of interest at summary judgment, we would essentially be shielding that evidence – and the inferences that it raised – from a bench trial."). *See also Hoffman v. Screen Actors Guild Producers Pension Plan,* 757 F. App'x 602, 605 (9th Cir. 2019) (Where a plaintiff "seeks to admit extrinsic evidence in order to prove the existence of procedural irregularities, then the court may review the additional evidence under the traditional summary judgment standards. The new evidence is reviewed de novo in the light most favorable to plaintiff.") (internal citations omitted). Defendants' Motion should also be denied on this basis.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 5
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

### B. Testimony By Properly Disclosed Experts is Generally Admissible in a Bench Trial.

If the Court reaches a determination of Defendants' Motion on the merits – and it need not do so – it should deny the Motion. The Court may properly consider the expert Report and testimony of Dr. Kraus.

"The Federal Rules encourage the admission of expert testimony." *U.S. v. Channon,* 2015 U.S. Dist. LEXIS 193351, *6 (D.N.M. Jan. 8, 2015). "The presumption under the Rules is that expert testimony is admissible." *Id.* Rather than excluding testimony, the preferred approach is to permit "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596 (1993). Where a case is tried to the bench, exclusion of expert testimony is even more extraordinary. "When the district court sits as the finder of fact, there is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018).

Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Hangarter v. Provident Life & Acc. Ins. Co.,* 373 F.3d 998, 1017 (9th Cir. 2004). Defendants do not claim that Dr. Kraus's opinion unhelpful, untimely disclosed, or does not otherwise meet the Fed. R. Evid. 702 standards. Dr. Kraus's expert opinions are generally admissible.

### C. Dr. Kraus's Expert Testimony Is Properly Admitted in This ERISA Litigation.

Defendants argue that judicial review in an ERISA-governed case is limited to the administrative record, with the exception of two types of evidence: (1) evidence of a conflict of interest between the administrator and the enrollee, and (2) evidence of "procedural irregularities" that prevented a full development of the record.[2] Dkt. No. 38, pp. 7-9. Defendants argue Dr. Kraus's Report does not fall within either exception. *Id.* Defendants misconstrue the law in

---

[2] If that were the case, the IRO decision in this matter, relied upon by Premera, would also be excluded. *See* Dkt. No. 38, pp. 4-5, 8.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DR. KRAUS'S REPORT - Page 6
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

attempting to improperly limit the Court's consideration of Dr. Kraus's expert opinion.

"A district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage." *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955, 968 (9th Cir. 2006). "[A]ll the facts and circumstances must be considered." *Id.*

> A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial; fails adequately to investigate a claim or ask the plaintiff for necessary evidence; fails to credit a claimant's reliable evidence; or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id.* at 968-969 (Internal citations omitted). *See also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114, 128 S. Ct. 2343 (2008) (inaccurate claims processing may be evidence of a conflict of interest). Here, there is substantial evidence in the administrative record of all four of the failures identified by the *Abatie* Court: Premera gave inconsistent reasons for denial; failed to investigate S.L.'s claim or ask S.L. for the specific evidence that would address the Plan's concerns; failed to credit the reliable evidence of S.L.'s treating providers; and made decisions against the weight of the evidence in the record.

Of equal importance, Premera used proprietary criteria – the InterQual criteria – that did not comply with the generally accepted medical standards Premera promised it would apply. *See* Dkt. No. 29-4, pp. 19-22. Premera did not even follow the InterQual criteria it arbitrarily selected, ignoring evidence of S.L.'s ongoing symptoms, including suicidality. *Id.* p. 23. The Court's consideration of all of these failures, including the failure to comply with generally accepted standards as detailed in Dr. Kraus's Report, is consistent with *Abatie's* call for "case-by-case" review of the circumstances. *Nolan,* 551 F.3d at 1153 ("[A] district court could consider evidence outside the administrative record to decide the conflict's nature, extent, and effect on the decision-making process."). Similarly, where procedural irregularities prevented the full development of the administrative record, the Court may also consider evidence outside of the administrative

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 7
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

record. *Burke v. Pitney Bowes Inc. Long-Term Disability Plan,* 544 F.3d 1016, 1028 (9th Cir. 2008). The Court should consider and weigh the evidence of Premera's failure to comply with generally accepted medical standards in its review of S.L.'s appeal, as detailed in Dr. Kraus's Report.[3]

### 1. Dr. Kraus's Report Addresses Whether There is a Conflict of Interest.

Premera argues that Dr. Kraus's Report should not be considered because it does not address whether a conflict of interest exists. Dkt. No. 38, pp. 7-8. Premera is simply wrong.

As described above, Premera's appeal review was fraught with procedural and substantive errors. The most serious errors are described by Dr. Kraus in his Report: Premera (a) misapplied its own InterQual criteria; (b) interpreted the criteria in a manner that does not comply with generally accepted medical standards; and (c) applied overly-restrictive criteria that appear designed to deny and limit coverage for medically necessary treatment to seriously ill adolescents. *See generally,* Dkt. No. 29-4. When a plan administrator applies overly restrictive coverage criteria, erroneously excluding medically necessary treatment, a conflict of interest may be found. *See Wit v. United Behavioral Health*, 2019 U.S. Dist. LEXIS 35205, *87-111, *93-109, *112-117, *127-136, (N.D. Cal. Feb. 28, 2019). Indeed, improperly restrictive guidelines can impose an "emphasis on cost-cutting" so embedded in the clinical review as to "actually taint[] the process." *Id.* at *210. *See also Egert v. Comm. Gen. Life Ins. Co.*, 900 F.2d 1032, 1036 (7th Cir.

---

[3] Premera cites various cases to support its argument that only the administrative record may be considered by the Court. Dkt. No. 38, p. 9, *citing Deloach v. San Diego Gas & Elec. Co.,* 2008 U.S. Dist. LEXIS 73526, at *34 (S.D. Cal. Sep. 24, 2008); *Neathery v. Chevron Texaco Corp. Grp. Accident Policy No. OK 826458,* 2007 U.S. Dist. LEXIS 26330, at *18 (S.D. Cal. Apr. 9, 2007). In neither case was there evidence of procedural or substantive irregularity or of conflict of interest as described in *Abatie. Compare, Saffon v. Wells Fargo & Co. Long Term Disability Plan,* 522 F.3d 863, 872 (9th Cir. 2008) (Ninth Circuit concluded trial court erred in its abuse of discretion review in refusing to consider beneficiary's proffered evidence that had not been before the administrator).

Premera also cites *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 n.2 (9th Cir. 2006), a pre-*Abatie* case whose holding is now outdated, and *Mullaney v. Paul Revere Life Ins. Co.,* which actually supports admission of Dr. Kraus's report. Dkt. No. 38, p. 11-12, *citing Mullaney,* 2018 U.S. Dist. LEXIS 112748, at *6 (W.D. Wash. July 6, 2018) (admitting additional evidence when it is necessary to assist the Court with understanding a complex medical issue). *See also Griffin v. Wells Fargo Bank Nw., N.A.,* 2009 U.S. Dist. LEXIS 141298, at *4 (D. Idaho Oct. 22, 2009) (cited by Premera but identifying various circumstances in which additional evidence may be admitted by the trial court).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 8
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

1990) (TPAs "may rely only upon those guidelines that reasonably interpret their plans"). This Court may properly consider Dr. Kraus's expert testimony regarding this conflict of interest. *See Sheakalee v. Fortis Benefits Ins. Co.,* 2009 U.S. Dist. LEXIS 31290, at *11 (E.D. Cal. Mar. 17, 2009) (expert medical witness testimony may be admitted to address lack of a "meaningful dialogue" and inadequate administrative review).

### 2. Dr. Kraus's Report Addresses Substantive Errors in Premera's Administrative Appeals Process Which Could Not Be Identified and Addressed Until *After* S.L.'s Administrative Appeal Concluded.

Premera faults S.L. and his parents for not timely obtaining an expert evaluation of Premera's failure to comply with generally accepted medical standards during the administrative appeals process and submitting such evidence **with his administrative appeals**. *See* Dkt. No. 38, p. 7. He could not have done so.

Dr. Kraus's Report is based upon his review of the administrative record. Dr. Kraus analyzed Premera's failure to consider and properly apply generally accepted medical standards ***throughout*** the administrative appeals process. He could not perform that analysis prior to the completion of the administrative appeals process. *See Dishman v. UNUM Life Ins. Co. of Am.,* 269 F.3d 974, 985-86 (9th Cir. 2001) (where a plaintiff could not have easily submitted the materials during the administrative appeals process, "one can hardly fault him for not doing so"). Dr. Kraus identifies multiple substantive errors that occurred throughout Premera's administrative review, including, but not limited to, the following:[4]

---

[4] Premera mistakenly asserts that Dr. Kraus's Report does not identify information that defendants should have considered during their review but did not. Dkt. No. 38, p. 8. Dr. Kraus reviewed the administrative record and concluded that the evidence submitted by S.L.'s parents and providers was so strong that Premera's conclusion that S.L. did not meet the criteria for treatment at a residential facility was "absurd." Dkt. No. 29-4, p. 24 ("Any reasonable expert … would have recommended residential treatment" for S.L.). He opines that Premera's reviewers ignored the undisputed medical information from S.L.'s providers and parents, and misapplied the overly restrictive Interqual criteria. All of the needed information to conclude that S.L.'s residential treatment was medically necessary is in the record.

However, Dr. Kraus identifies one area of missing critical information: Once it mistakenly concluded that S.L. did not need residential treatment, Premera assumed, ***without any investigation or evidence***, that there were unidentified less restrictive alternative treatment options available that would meet S.L.'s needs. *Id.,* pp. 20-21, 24. Premera ignored the evidence from S.L.'s treating providers that there was no local, less restrictive alternative that could safely meet his needs. *See* Dkt. Nos. 29-9; 29-10, p. 5; 29-14, p. 2.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 9
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

- The InterQual criteria upon which Premera relies were improperly applied throughout the appeals process. See Dkt. No. 29-1, pp. 4-5 (requiring a look-back period for symptoms of up to six months); Dkt No. 29-11, p. 2 (Premera's contract reviewer only considered S.L.'s symptoms on a single day, May 17, 2016, the date he was admitted to Catalyst). Based upon the administrative record, Dr. Kraus concludes: "Narrowing consideration of a patient's symptoms to a single day is not consistent with any generally accepted medical practice." See Dkt. No. 29-4, p. 19.

- Premera improperly applied the treatment criteria for inpatient hospitalization (danger to self or others) to determine whether coverage of residential treatment was medically necessary. *Id.*, p. 24 ("residential programs are not set up to treat adolescents who are at an acute risk for harm or suicidal.").

- Throughout the appeals process, Premera reviewers concluded S.L. was not sufficiently acutely symptomatic for residential treatment, but at the same time, failed to consider whether "S.L. could be served in any specific alternative placements or even whether such placements were available to him." *Id.*, p. 20.

- Premera failed to assess S.L.'s family situation as part of the appeals process to determine whether discharge to his home on May 17, 2016 would be safe and appropriate. *Id.*

- Premera did not consider the risk to S.L. in withdrawing treatment services, i.e., whether this would result in deterioration, relapse or hospitalization. *Id.*, pp. 21-22. While Premera's non-medical reviewers acknowledged S.L. needed treatment, *see* Dkt. No. 29-16, p. 1 ("There's no doubt in my mind that this member has some mental health & possibly chemical dependency issues that he needs help with."), Premera never identified any alternative treatment program to Catalyst available to S.L.

- Throughout the appeals process, Premera's reviewers and appeals panelists ignored the independent judgment of S.L.'s treating providers, even though the providers were

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 10
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

the only mental health professionals to directly evaluate S.L.  This was error and violated generally accepted medical standards.  Dkt. No. 29-4, p. 22; *see Sheehan v. Metro. Life Ins. Co.*, 368 F. Supp. 2d.228, 255 (S.D.N.Y. Mar. 15, 2005) ("Courts routinely discount or entirely disregard the opinions of psychiatrists who had not examined the individual in question at all.").

S.L. could not have submitted this evidence until after the administrative appeals process had concluded.  Premera's argument that it is "too late" for him to do so now should be rejected.

### 3. Premera's Administrative Appeals Process Was Full of Procedural Irregularities.

Premera concedes that evidence outside of the administrative record may be considered where procedural irregularities prevented the "full development of the administrative record." Dkt. No. 38, p. 9.  Plaintiff has identified multiple serious procedural errors:

- Premera denied S.L.'s initial pre-authorization request for a "lack of information" even though it gave S.L.'s provider only **90 minutes** to obtain records from a different provider.  Premera made no effort to get the records itself, despite paying for the services at the prior facility.

- The only call by a Premera reviewer to one of S.L.'s treating providers did not seek any additional or missing information.  Instead, the reviewer confirmed the denial would stand.  Dkt. No. 29-8, p. 10.

- Premera denied coverage based upon S.L.'s symptoms on a single day, May 17, 2016, disregarding the specific requirements in its InterQual criteria.

- Premera's second-level appeal did not include any mental health specialist, and at least one panelist denied coverage because he viewed residential mental health treatment as never medically necessary, pejoratively calling it a "boarding school with a little therapy sprinkled on top."

- Premera's denial letters did not identify the specific plan language or the component of the InterQual criteria that formed the basis of its denial.  *See* Dkt. No. 29-13, p. 1.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 11
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

These repeated, serious procedural errors demonstrate that a full administrative record was not developed.  S.L.'s parents struggled to understand what additional information they could provide to inform Premera's decision.  All of S.L.'s treating providers agreed he continued to need residential treatment at Catalyst.  Not a single provider who evaluated S.L. determined he was ready to return home.  Even Premera failed to identify specific alternative services to those offered by Catalyst that were available and appropriate for S.L.  Premera improperly ignored the extensive evidence and instead focused solely on S.L.'s symptoms on a single day to uphold its prior denials.

Premera argues that these procedural errors do not support the admission of Dr. Kraus's Report since he does not address the violations.  *See* Dkt. No. 38, p. 8.  Premera applies the wrong test.  Extensive procedural ***and*** substantive errors in the administrative process, taken together, may demonstrate a conflict of interest and/or an inadequate administrative record to justify the consideration of evidence outside of the administrative record.  *Nolan,* 551 F.3d at 1153; *Burke,* 544 F. 3d at 1028.

## IV.   CONCLUSION

This Court should deny Defendants' Motion to Strike Dr. Kraus's Expert Report.

DATED:  December 16, 2019.

      SIRIANNI YOUTZ
      SPOONEMORE HAMBURGER PLLC

      *s/ Eleanor Hamburger*
      Eleanor Hamburger (WSBA #26478)
      Richard E. Spoonemore (WSBA #21833)
      3101 Western Avenue, Suite 350
      Seattle, WA  98121
      Telephone:  (206) 223-0303
      Facsimile:  (206) 223-0246
      ehamburger@sylaw.com
      rspoonemore@sylaw.com

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 12
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400

MEGAN E. GLOR ATTORNEYS AT LAW

   *s/ Megan E. Glor*
Megan E. Glor (*Admitted pro hac vice*)
707 NE Knott Street, Suite 101
Portland, OR 97212
Telephone: (503) 223-7400
Facsimile: (503) 751-2071
megan@meganglor.com

Attorneys for Plaintiff S.L.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO STRIKE DR. KRAUS'S REPORT - Page 13
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR 97212
503-223-7400

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Lisa M.C. Elizondo**
  lelizondo@kilpatricktownsend.com, irountree@kilpatricktownsend.com, lisa.mc.elizondo@gmail.com

- **Megan E Glor**
  megan@meganglor.com; robert@meganglor.com

- **Eleanor Hamburger**
  ehamburger@sylaw.com, matt@sylaw.com, stacy@sylaw.com, theresa@sylaw.com

- **Gwendolyn C. Payton**
  GPayton@kilpatricktownsend.com, irountree@kilpatricktownsend.com

- **Richard E Spoonemore**
  rspoonemore@sylaw.com, matt@sylaw.com, rspoonemore@hotmail.com, stacy@sylaw.com, theresa@sylaw.com

I further certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

- (No manual recipients)

DATED: December 16, 2019, at Seattle, Washington.

  */s/ Eleanor Hamburger*
  Eleanor Hamburger (WSBA #26478)
  ehamburger@sylaw.com

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE DR. KRAUS'S REPORT - Page 14
[Case No. 2:18-cv-01308-RSL]

Megan E. Glor, Attorneys at Law
707 NE Knott Street, Suite 101
Portland, OR  97212
503-223-7400