UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.L., by and through his parents and guardians, J.L. and L.L., <br><br> Plaintiff, <br><br> v. <br><br> PREMERA BLUE CROSS, et al., <br><br> Defendants. | Case No. C18-1308-RSL <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL AND DENYING DEFENDANTS' MOTION TO STRIKE |

This matter comes before the Court on (1) plaintiff's "Motion to Compel Production" (Dkt. #28) and (2) defendants' "Motion to Strike Report of Dr. Louis J. Kraus" (Dkt. #38). Having reviewed the motions, exhibits, and the record contained herein, the Court finds as follows:

**I.   BACKGROUND**

This action arises under the Employee Retirement Security Act of 1974 ("ERISA"). Dkt. #1. Plaintiff S.L., by and through his parents, seeks coverage for his mental health treatment at Catalyst, a residential treatment center in Utah. Id. Plaintiff received coverage under the Amazon Corporate LLC Group Health and Welfare Plan ("the Plan") through his father, an Amazon employee. Id. at ¶ 1, 13. Amazon Corporate LLC ("Amazon") self-insures and administers the Plan, and Premera Blue Cross ("Premera") serves as the claims processor. Id. at ¶¶ 2-4.

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
AND DENYING DEFENDANTS' MOTION TO STRIKE - 1

Prior to receiving treatment at Catalyst, plaintiff was treated at Northwest Behavioral Healthcare Services ("NBHS") in January 2016 for "escalated substance use, anxiety, ADHD, suicidal ideation, and self harm." Dkt. #29-9 (Ex. I). On February 18, 2016, plaintiff was transferred to Evoke Therapy Programs ("Evoke"), where he remained until May 16, 2016. See Dkt. #29-10 (Ex. J). Amazon covered the treatment at both NBHS and Evoke as medically necessary. Plaintiff began treatment at Catalyst on May 17, 2016.

On May 16, 2016, Premera denied the preauthorization request for plaintiff's treatment at Catalyst as not medically necessary. See Dkts. #29-5 (Ex. E), #29-6 (Ex. F). On September 19, 2016, plaintiff's parents initiated a first-level appeal, see Dkt. #29-8 (Ex. H), which was denied on September 26, 2016, Dkts. #29-11 (Ex. K), #29-13 (Ex. M). Plaintiff's parents subsequently proceeded with a second-level appeal on November 16, 2016, Dkt. #29-12 (Ex. L), which was denied on December 20, 2016, Dkt. #29-15 (Ex. O). Thereafter, plaintiff initiated this ERISA action to challenge defendants' benefits determination. Dkt. #1.

## II.   PLAINTIFF'S MOTION TO COMPEL PRODUCTION[1] (Dkt. #28)

Plaintiff seeks discovery related to defendants' adoption and utilization of the InterQual Criteria for claims processing. Plaintiff alleges that the information is relevant to his claims that defendants adopted and applied the InterQual Criteria in breach of their fiduciary duties, and that a structural conflict of interest adversely affected Premera's benefits determination. Plaintiff served Second Requests for Production of Documents regarding the InterQual Criteria. See Dkt. #29-2 (Ex. B). Defendants objected to plaintiff's requests, arguing *inter alia*, that plaintiff sought information outside the scope of the Federal Rules of Civil Procedure and discovery permitted under ERISA. Dkt. #29-3 (Ex. C). Defendants argue that plaintiff should

---

[1] As a threshold matter, the Court notes that plaintiff violated the Local Rules of this District by filing an overlength motion without prior leave from the Court. Plaintiff's motion exceeded the page limit by nine pages, but plaintiff's counsel later indicated that the oversight was largely due to formatting issues. See Dkt. #33 (Glor Decl.). Given the circumstances, the Court will accept the overlength brief in this instance. Plaintiff is advised that further filings exceeding the page limits set forth in the Local Rules may be stricken. See LCR 7(e)(6).

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
AND DENYING DEFENDANTS' MOTION TO STRIKE - 2

not be permitted to conduct discovery of this information because evidence in this ERISA action is limited to the administrative record.

Plaintiff does not dispute that the Plan confers discretion on Premera to determine eligibility for benefits and to construe the terms of the Plan, and that accordingly, the standard for this Court's review is abuse of discretion.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Dkt. #28 at 13; Dkt. #1-1 at 3.  When reviewing ERISA cases for abuse of discretion, courts are generally limited to the administrative record.  See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).  However, even under this deferential standard, limited discovery regarding the existence, extent, and effect of a conflict of interest on the part of the plan administrator has long been permitted in ERISA cases.  See id.  A "structural conflict of interest" arises in an ERISA case when an insurer serves as both the plan administrator and the funding source for benefits.  See id. at 965.  Although a self-insured disability plan can minimize the structural conflict of interest by delegating claim administration duties to a third-party, "[t]he delegation of claims to a third-party does not ensure against a structural conflict of interest because some employers may nevertheless influence the third-party administrator's decision making." Leu v. Cox Long-Term Disability Plan, No. 2:08-CV-00889-PHX-JAT, 2009 WL 2219288, at *2-3 (D. Ariz. July 24, 2009) (collecting cases) ("A *per se* rule that eliminates structural conflict upon delegation of claim administration seems contrary to the Ninth Circuit's broad statement that plaintiffs will have the benefit of an abuse of discretion review that always considers the inherent conflict when a plan administrator is also the fiduciary, even in the absence of smoking gun evidence of conflict." (internal quotation marks, alterations, and citations omitted)); see also Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 114-15.  For this reason, the Plan's delegation of claims processing to Premera does not automatically allay concerns as to the potential existence of a structural conflict.

The Court is not persuaded by defendants' assertions that (1) no conflict of interest exists here, and (2) the discovery plaintiff seeks is irrelevant to any possible conflict of interest.  Dkt. #31 at 6-12.  Plaintiff has pointed to evidence showing that a conflict of interest may indeed have impacted defendants' benefits determination.  For example, defendants denied coverage

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
AND DENYING DEFENDANTS' MOTION TO STRIKE - 3

because the information that Catalyst sent was "from 3 months ago and farther back" and did not include "information about [plaintiff's] recent and current condition." Dkt. #29-6 (Ex. F) at 1. But, at the same time, plaintiff has provided evidence that defendants allowed Catalyst only 90 minutes to obtain the requested information from Evoke. Dkt. #29-7 (Ex. G) at 3 ("05/16/2016 10:29[a] . . . I advised facility that if no clinical is rec'd by 12p PST today, case will be reviewed by AMD for a possible denial."). In addition, plaintiff has shown that Premera's first-level appeal reviewer considered records only from the day of plaintiff's admission to Catalyst, Dkt. #11 (Ex. K), even though his parents provided additional medical documentation, Dkts. #29-8 (Ex. H), #29-9 (Ex. I), #29-10 (Ex. J), and despite the fact that the so-called "look-back" period prescribed in the InterQual Criteria is 24 hours to six months. Dkt. #29-1 (Ex. A) at 3-5. Moreover, plaintiff has demonstrated that Premera's second-level appeal panel did not include a mental health specialist, and that one of the appeal panelists expressed a strong disinclination for residential treatment centers, despite clear Plan language describing medically necessary coverage of residential mental health treatment. Dkts. #29-15 (Ex. O) at 1, #29-16 (Ex. P) ("The problem I have with [residential treatment centers] (*and why I don't think they're medically necessary*) is that a majority of their curriculum is spent doing things which on the surface don't appear to be dealing with those issues. It's basically a boarding school with some therapy sprinkled on top[.]" (emphasis added)); see also Dkt. #1-1 at 23.

Despite defendants' assertions to the contrary, "[p]laintiff is not seeking to take discovery on the off chance that [he] will uncover a conflict of interest: [he] already has evidence of irregularities in the claims handling procedure that resulted in the [denial] of benefits." Vancleave v. Boeing Co. Non-Union Long Term Disability Plan, No. C09-1512RSL, 2010 WL 8946093, at *2 (W.D. Wash. June 15, 2010). In determining the weight to assign to any potential conflict of interest and evaluating whether the administrator abused its discretion, the Court must consider all the facts and circumstances regarding the benefits determination. See Abatie, 458 F.3d at 967-68. The discovery plaintiff seeks is relevant and narrowly tailored to

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
AND DENYING DEFENDANTS' MOTION TO STRIKE - 4

these issues, on which the Court will likely hear evidence.[2]  See Vancleave, 2010 WL 8946093, at *2.  Accordingly, plaintiff's motion to compel production of documents responsive to his Second Requests for Production is GRANTED.

### III.    DEFENDANTS' MOTION TO STRIKE (Dkt. #38)

Plaintiff included a September 4, 2019 report from Dr. Louis J. Kraus ("Kraus Report" or "Report") as an exhibit to his motion to compel.  See Dkt. #29-4 (Ex. D).  Although defendants do not object to the Court's consideration of the Kraus Report for purposes of plaintiff's motion to compel, Dkt. #43 at 1 n.1, they move to strike the Report from the record for purposes of any motion for summary judgment or trial.  Id. at 1; see generally Dkt. #38.  The Court agrees with plaintiff that defendants' motion to strike is premature at this stage of the litigation.  See Dkt. #41 at 5.  Accordingly, defendants' motion to strike is DENIED without prejudice to their ability to renew the motion at the time of summary judgment briefing or trial.

### IV.    CONCLUSION

For all the foregoing reasons, plaintiff's motion to compel production of documents responsive to his Second Requests for Production (Dkt. #28) is GRANTED.  Defendants' motion to strike the Kraus Report (Dkt. #38) is DENIED without prejudice.

DATED this 17th day of August, 2020.

*[signature: MrT S Lasnik]*

Robert S. Lasnik
United States District Judge

---

[2] The Court notes that ERISA plaintiffs face a difficult task in showing an administrator abused its discretion.  Under these circumstances, however, this consideration does not diminish plaintiff's right to the discovery he requests.

ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL
AND DENYING DEFENDANTS' MOTION TO STRIKE - 5